RONALD S. SANFELIPPO, Administrator Division of EmergencyGovernment Department of Local Affairs and Development
Your predecessor has asked a number of questions of this office dealing with the implementation of the Disaster Relief Act of 1974 (P.L. 93-288) and particularly as to whether there are any obstacles of a constitutional or statutory nature which would hinder the implementation of such a relief program in Wisconsin. The portion of the program with which this opinion is concerned provides for 75 percent federally funded grants to individuals and families who qualify under sec. 408, with the state furnishing the remaining 25 percent of the funds.
The first question you have asked is whether state agencies now make grants of state money to individuals and families for any *Page 40 
purpose that might be considered an "expense" or "need" in the context of sec. 408 and, if not, is the obstacle constitutional or statutory.
Section 408 authorizes grants to be made to meet the necessary disaster-related expenses or serious needs of individuals or families adversely affected by a major disaster in such instance where the individuals or families are unable to meet these expenses or needs through assistance under other provisions of the Act or from other means.
Wisconsin has organized a system of emergency government for the purpose of preparing the state and its subdivisions for emergencies resulting from enemy action and natural or man-made disasters. The powers and duties of the governor and other individuals and governmental units are set out in secs. 22.16 to 22.22, Stats. Currently the state organization for emergency government gives aid in the way of grants and government services only to the local emergency governmental units in the counties, towns, and municipalities. There is no statutory authority for the granting of aid directly to the individual or family.
However, it is my opinion that the absence of any grants of state money to individuals and families is not the result of a constitutional obstacle. It is necessary to examine a number of provisions of the Wisconsin Constitution and the doctrine of public purpose in connection with the expenditure of state funds in order to arrive at this conclusion.
Article VIII, sec. 2, Wis. Const., provides that "No money shall be paid out of the treasury except in pursuance of an appropriation by law . . . ." Therefore, until the state legislature authorizes and appropriates money to make the type of payments contemplated by sec. 408 of the Disaster Relief Act of 1974, any payments so made would constitute an illegal expenditure of state funds.
Article VIII, sec. 3, Wis. Const., states that "The credit of the state shall never be given, or loaned, in aid of any individual, association or corporation."
The Attorney General has considered the affect of this prohibition in connection with other types of state expenditures. In 34 OAG 65 (1945) the Attorney General determined that there was no loan of the state's credit involved in the making of loans to *Page 41 
war veterans out of state funds when appropriations from the treasury had been made by the legislature to cover the loans and the state had not engaged in borrowing to finance the loans. Similarly, in 42 OAG 103 (1953) the Attorney General, referring to the 34 OAG 65 opinion, determined that there was no loan of credit involved in the advancement of travel expenses to state employes when the funds for such payments came from a legislative appropriation.
Similarly, if grants are made to individuals from money previously appropriated by the legislature for this purpose, such payments would not constitute a violation of the Wisconsin Constitution, provided that the expenditures are for a public purpose.
State funds can only be spent for a public purpose and since a tax must be spent at the level at which it is raised, in this instance, where state funds are involved, the public purpose must also be a state purpose. State ex rel. Warren v. Nusbaum (1973),59 Wis.2d 391, 208 N.W.2d 780.
Section 101 of the Disaster Relief Act of 1974, containing the declaration of Congressional intent, states that the federal government is providing a means of assisting state and local governments during periods of disaster because of the inability of these local units to always provide adequate relief and because disasters often cause loss of life, human suffering, loss of income, property loss and damage, and disruption of the normal functioning of governments and communities. Presumably the state legislature would state a similar intent should it decide to appropriate funds and participate in this federal assistance program.
In State ex rel. New Richmond v. Davidson (1902), 114 Wis. 563,88 N.W. 596, 90 N.W. 1067, the court addressed itself to the issue as to whether an appropriation to aid the City of New Richmond in the wake of a cyclone which caused numerous deaths and extensive property damage, constituted a public purpose and, also, whether that public purpose was a state purpose. The court never seemed to doubt that the expenditures were for a public purpose. The opinion states, at page 575: But it is not seriously claimed that the object of the legislation in question was not public." The more difficult question was whether the aid to a local *Page 42 
community served a state purpose. The court held that it did, stating, at page 579:
 ". . . No forecast could have anticipated and guarded against the calamity. The local authorities were powerless in the presence of such great destruction, suffering, and death. The condition of things, so suddenly precipitated, the claims of humanity, and the good of the state called for immediate and extraordinary relief. In passing the act the legislature were called upon to consider the whole situation. The people of the commonwealth were bowed in sorrow over the great calamity, and the call was for the immediate exercise of the police power of the state on a large scale. The object of the act being public, and to subserve the common interest and well-being of the people of the state at large, brought the subject legitimately within the power of the legislature . . . ."
However, in State ex rel. New Richmond the appropriation was made to the city government. The grant did not go to the individual citizens of the city, as sec 408 of the Disaster Relief Act contemplates. It is, therefore, necessary to consider whether state funds can be paid to private individuals, assuming that such payment is serving a public purpose lt is my opinion that they can be so paid.
In State ex rel. Wisconsin Development Authority v. Dammann
(1938), 228 Wis. 147, 277 N.W. 278, 280 N.W. 698, the court considered the validity of an appropriation of state funds to the Wisconsin Development Authority. a private corporation. The court said, at page 176:
 "The mere fact that the appropriation was to reimburse a private corporation for expenditures incurred by it to effect purposes specified in the act does not render the appropriation invalid if the services are for a public purpose . . . . When, however, the appropriation is solely for a public purpose and is under proper governmental control and supervision, it is not invalid merely because it is paid to or through a private corporation or agency . . . ."
At pages 180 and 181 of the opinion, the court, in attempting to determine whether the Authority's functions constituted a public purpose, cited numerous examples of public purposes. They are of *Page 43 
relevance to this opinion because many of the examples cited involve payments to private individuals. The list includes educational assistance to veterans of the World War, State exrel. Atwood v. Johnson (1919), 170 Wis. 251, 176 N.W. 224; special aid to farmers in situations where many farmers and their families might otherwise suffer in health or die from want of food, Cobb v. Parnell (1931), 183 Ark. 429, 36 S.W.2d 388; and aid to tornado victims, State ex rel. New Richmond v. Davidson,supra.
In State ex rel. Warren v. Nusbaum (1972), 55 Wis.2d 316,198 N.W.2d 650, the court held that a contract with the Marquette University School of Dentistry to provide for an increase in the training of much-needed dentists constituted a public purpose, although the court held that the statute itself was unconstitutional as a violation of the "establishment" and "free exercise" clauses of Amendment I, U.S. Const. Subsequent to this decision legislation was enacted which enabled the state to appropriate money for the aid of dental education at Marquette. In State ex rel. Warren v. Nusbaum (1974), 64 Wis.2d 314,219 N.W.2d 577, the court upheld payments to private schools that are providing special educational services to handicapped children as provided in ch. 89, Laws of 1973, an admittedly public purpose.
The cases cited above are additional support for my opinion that funds may be paid to private corporations or individuals if the appropriations constitute a public purpose.
Your second question asks whether my response would be different if all of the funds for grants were provided by the federal government, with state administration of the grant. As I have found that no constitutional obstacle exists, although currently there is no statutory authorization for the appropriation as required by Article VIII, sec. 2, Wis. Const., my opinion as regards the constitutionality of the payments would not be changed as applied to the hypothetical situation which you have posed. However, I am of the further opinion that it would not be necessary for the legislature to pass a statute authorizing the expenditure of such funds because such an appropriation already exists.
Section 16.54, Stats., authorizes the governor to accept all funds on behalf of the state that are made available to the state by the United States government. Section 20.545 (2) (n), Stats., appropriates such money as received by the state from the federal *Page 44 
government, as authorized by the governor under sec. 16.54, Stats., for local assistance to the emergency government. Therefore, the Wisconsin constitutional requirement that only such money as appropriated by law shall be paid out of the treasury has been met.
Your third question asks whether the state can give such a grant retroactively. State ex rel. New Richmond v. Davidson,supra, speaks to this issue. The situation was that the city had borrowed money from trust funds of the state for purposes of cleanup and reconstruction after the cyclone. Later the state passed an act which relieved the city of its indebtedness to the state. The court held that because the legislature could have appropriated money to the city at the time of the disaster, had it been in session, it necessarily followed that it had the power to reimburse the city for such expenditures.
Your fourth question asks whether there are any constitutional or statutory obstacles to accepting a federal advance of the state's share, and whether the state would consider the advance, "to be repaid to the United States when such state is able to do so," to be a grant or a loan.
Section 408 (b) of the Federal Disaster Act of 1974 provides that when the state is not able to pay immediately its 25 percent share, that the President will authorize an advancement to the state and that "any such advance is to be repaid to the United States when such State is able to do so." I read this to mean that while the state is not under any specified time requirements as to repayment of the money, nevertheless the money must be repaid at some time. I find that this reading is compelled by the use of the word "advance." Therefore, in accepting such an advance, the state is contracting a debt and is legally obligated to repay the advance.
Article VIII, sec. 4, Wis. Const., provides that "The state shall never contract any public debt except in the cases and manner herein provided." Article VIII, sec. 7. provides for the contracting of public debt for public defense and bonding for public purposes, and as written does not apply to this situation. Article VIII, sec. 6, Wis. Const., provides for contracting public debt for the purpose of defraying extraordinary expenditures and is applicable to this situation. However, this section provides that all such debts shall never in the aggregate exceed $100,000.00. Therefore, assuming *Page 45 
that the state had not created any other debts under this section, the state can only be constitutionally obligated under this section to the extent of $100,000.00.
The term "debt" as used in Article VIII, sec. 4, was defined by the court in State ex rel. Owen v. Donald (1915), 160 Wis. 21, at page 59, 151 N.W. 331:
 "There is nothing particularly technical about the meaning of the word `debt' as used in the constitution. It includes all absolute obligations to pay money, or its equivalent, from funds to be provided, as distinguished from money presently available or in process of collection and so treatable as in hand. [cases cited]."
In State ex rel. Warren v. Nusbaum (1973), 59 Wis.2d 391,208 N.W.2d 780, the court referred to the above-cited case saying, at page 428:
 "This court has heretofore consistently held that no state debt is created unless the state itself is under a legally enforceable obligation . . . ."
It is my opinion that an advance to the state of its share of the grant would constitute a debt, and would therefore be subject to the limitations set forth in Article VIII, sec. 4 and 6, Wis. Const.
Assuming that the state decided to incur a debt as provided in Article VIII, sec. 6, Wis. Const., statutory authorization would be required pursuant to the above constitutional provision.
BCL:JEA