FREEDOM FROM RELIGION FOUNDATION,
INC., Ann Gaylor, Dr. Michael Hakeem, Kenneth
Taubert, Dan Barker, and Constance Fuller Threinen,
Plaintiffs-Respondents,†

v.

Tommy G. THOMPSON, Governor of the State of
Wisconsin, and James R. Klauiser, Secretary of the
Wisconsin Department of Administration, Defendants-
Appellants.

Court of Appeals

*No. 90-2083. Submitted on briefs April 4, 1991.—Decided
September 26, 1991.*

(Also reported in 476 N.W.2d 318.)

† Petition to review denied.

737

For the defendants-appellants the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, *James E. Doyle,* attorney general and *F. Thomas Creeron, III,* assistant attorney general.

For the plaintiffs-respondent the cause was submitted on the briefs of *Bronson C. La Follette* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J.   Plaintiffs brought an action challenging sec. 20.505(1)(fm), Stats. (1989),[1] a $100,000 leg-

---

[1]Section 20.505(1)(fm), Stats. (1989), provided:

> *St. Norbert college grant.* The amounts in the schedule for the department to provide a grant to St. Norbert college for planning of an international center.

Section 501p, 1989 Wis. Act 31. The schedule provided for an

islative grant to St. Norbert College, as violating the establishment clause of the First Amendment of the United States Constitution[2] and article I, section 18, of the Wisconsin Constitution.[3] Granting judgment on the pleadings, the trial court found sec. 20.505(1)(fm) unconstitutional on its face. We conclude the trial court erred in granting judgment on the pleadings and, therefore, reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiffs brought suit against the officials (defendants) who administer sec. 20.505(1)(fm), Stats. (1989), seeking declaratory and injunctive relief. Plaintiffs alleged that St. Norbert College is a religious establish-

---

appropriation of $100,000. Section 195, 1989 Wis. Act 31. Section 20.505(1)(fm) was repealed by sec. 501q of the same act and sunsetted July 1, 1990. *See* secs. 501q and 3203(1)(dt), 1989 Wis. Act 31.

[2]The First Amendment of the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

[3]Article I, section 18, of the Wisconsin Constitution provides:

> The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interferences with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.

ment operated in accordance with the teachings of the Roman Catholic Church and that sec. 20.505(1)(fm) violated the establishment clause of the First Amendment and article I, section 18 of the Wisconsin Constitution. Plaintiffs also moved for a temporary restraining order, enjoining defendants from delivering the grant to St. Norbert College.

The parties stipulated to an expedited briefing schedule. In addition, defendants answered plaintiffs' amended complaint. The trial court construed the action as one for judgment on the pleadings[4] and granted judgment in plaintiffs' favor. Defendants appeal.

---

[4]It is unclear from the record why the trial court issued a final judgment. Neither party moved for a judgment. The only motion made was for a temporary restraining order.

Apparently, the parties agreed that, following the expedited briefing, a judgment would issue, although they disagreed on its form. Defendants contended summary judgment was appropriate because plaintiffs had presented "matters outside the pleadings" in their brief-in-chief, thus converting the (never-filed) motion for judgment on the pleadings to one for summary judgment under sec. 802.06(3), Stats. Plaintiffs countered that the motion was one for judgment on the pleadings because the only matter submitted in their brief-in-chief, not contained in their pleadings, was a note from the legislative drafting record of sec. 20.505(1)(fm), Stats. (1989).

The trial court concluded that the note had not been "presented" to the court within the meaning of sec. 802.06(3), Stats., because it had not been provided in support of plaintiffs' complaint but, rather, to rebut the defendants' request that the court take judicial notice of the note. We agree with this result, but for a different reason.

The phrase "matters outside the pleadings" should not be read so broadly so as to include items of legislative history, which do not concern evidentiary facts and which could be introduced without supporting affidavits.

740

## II. STANDARD OF REVIEW

A judgment on the pleadings is essentially a "summary judgment minus affidavits and other supporting documents." *Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159, 161 (1988) (quoting Clausen & Lowe, *The New Wisconsin Rules of Civil Procedure Chapters 801–803*, 59 Marq. L. Rev. 1, 55–56 (1976)). Thus, we apply the first two steps of summary judgment methodology to determine whether judgment on the pleadings is appropriate. *See In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We first examine the complaint to determine whether a claim has been stated. *Id.* We then turn to the responsive pleadings to ascertain whether a material factual issue exists. *Schuster*, 144 Wis. 2d at 228, 424 N.W.2d at 161. If the complaint is sufficient to state a claim and the responsive pleadings raise no material issues of fact, judgment on the pleadings is appropriate. *Id.* Whether judgment on the pleadings should be granted is a question of law which we review *de novo*. *See id.*

## III. ESTABLISHMENT OF RELIGION

We first examine the legal sufficiency of plaintiffs' amended complaint, mindful of the fact that at this stage, "the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true." *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182, 186 (1982) (citation omitted). Plaintiffs allege that St. Norbert College is a religious college organized as a not-for-profit corporation under Chapter 181, Stats. Plaintiffs further allege that the articles of incorporation of the college provide: (1) that the college shall be operated

"within the context of theology, philosophy, [and] other teachings and doctrines of the Roman Catholic Church"; (2) that the sole shareholder of the corporation is a non-profit corporation registered as the "Premonstratensian Fathers"; (3) that the board of directors of St. Norbert College shall be appointed by the Premonstratensian Fathers; and (4) that the articles of incorporation only may be amended or repealed by the Premonstratensian Fathers. Finally, the plaintiffs allege that each member of the Premonstratensian Fathers' board of directors is a member of the Roman Catholic clergy.

To determine whether plaintiffs' amended complaint states a claim, we turn to cases interpreting the establishment clause of the first amendment. The United States Supreme Court has consistently followed the three-part test articulated in *Lemon v. Kurtzman,* 403 U.S. 602 (1971), to determine whether governmental aid offends the establishment clause:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster "an excessive government entanglement with religion."

*Id.* at 612–13 (citations omitted). The statute is valid only if it meets all three tests. *See Edwards v. Aguillard,* 482 U.S. 578, 583 (1987).

The Wisconsin Supreme Court has applied the United States Supreme Court's interpretation of the requirements of the establishment clause to article I, section 18, of the Wisconsin Constitution. *See State ex rel. Wisconsin Health Facilities Auth. v. Lindner,* 91 Wis. 2d 145, 163–64, 280 N.W.2d 773, 783 (1979); *State ex rel. Warren v. Reuter,* 44 Wis. 2d 201, 226–27, 170

N.W.2d 790, 801-02 (1969). Consequently, we employ the three-part *Lemon v. Kurtzman* test to determine whether a specific state law violates either constitutional provision. *See Lindner,* 91 Wis. 2d at 163-64, 280 N.W.2d at 783.

The United States Supreme Court has applied the *Lemon* test to government aid to colleges and universities on several occasions. *See Tilton v. Richardson,* 403 U.S. 672 (1971); *Hunt v. McNair,* 413 U.S. 734 (1973); *Roemer v. Board of Pub. Works of Maryland,* 426 U.S. 736 (1976). In *Hunt,* the Court examined a state statute allowing issuance of revenue bonds for the construction of college facilities. *Id.* at 736-37. The statute specified that the bond projects could not involve "any facility used or to be used for sectarian instruction." *Id.* at 736.

The *Hunt* Court upheld the statute under the *Lemon* test. In applying the second, "primary effect," prong of the *Lemon* test, however, the Court added the following refinement:

> Aid normally may be thought to have a primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission or when it funds a specifically religious activity in an otherwise substantially secular setting.

*Hunt,* 413 U.S. at 743; *see State ex rel. Warren v. Nusbaum,* 64 Wis. 2d 314, 325, 219 N.W.2d 577, 583 (1974).[5]

---

[5]The Wisconsin Supreme Court has observed that:

> In contrast to the *Roemer-Hunt-Tilton* line of decisions involving colleges and universities, the Court has generally held that elementary and secondary schools are pervasively sectarian. *See, e.g., Meek v. Pittenger,* 421 U.S. 349 (1975); *Committee for Public Education v. Nyquist,* 413 U.S. 756 (1973); *Levitt v. Committee for Public Education,* 413 U.S. 472 (1973). The basis of this distinction is the

*Hunt* therefore requires "(1) that no state aid at all go to institutions that are so 'pervasively sectarian' that secular activities cannot be separated from sectarian ones, and (2) that if secular activities can be separated out, they alone may be funded." *Roemer*, 426 U.S. at 755.

Plaintiffs' complaint alleges that the grant will "violate . . . the First Amendment." Inherent in this allegation is the charge that the grant offends one or more of the factors of the three-part *Lemon v. Kurtzman* test. We first examine whether the legislature was motivated in enacting sec. 20.505(1)(fm), Stats. (1989), by a legitimate secular purpose. *Lemon*, 403 U.S. at 612.

██

. Section 20.505(1)(fm), Stats. (1989), states that the statutory grant is for "planning of an international center." Other than that, the legislative purpose for funding the center is not specified.[6] The trial court cor-

_____

> recognition that the very purpose of many elementary and secondary schools is to provide an integrated secular and religious education.

*Lindner*, 91 Wis. 2d at 156–57, 280 N.W.2d at 779–80.

[6]Defendants rely on a entry in the drafting record of sec. 501p, 1989 Wis. Act 31, stating:

> This motion would provide a special appropriation to the Department of Administration of $100,000 GPR in 1989–90 to provide a planning grant to St. Norbert College for the College's proposed International Center. The College has indicated that the planing grant would be used as follows: (1) $25,000 would be for the costs of planning conferences for potential users of the Center; (b) $25,000 for funding for consultants to meet with faculty to work on identification of reference materials, equipment and program services and curriculum for the new Center; and (c) $50,000 funding for an architect and engineering firm to prepare an architectural program and schematic design of the Center and provide a cost estimate of construction.

Like sec. 20.505(1)(fm), Stats. (1989), this entry does not specify whether the curriculum of the proposed international center will

rectly noted that the statute "does not contain a restriction against the 'religious use' of the funds and contains no declaration of public purpose to aid in interpreting the purpose behind the statute." We conclude that plaintiffs' complaint raises a inference that the grant has a sectarian purpose.

Similarly, we conclude that the complaint raises questions of fact concerning the second *Lemon* factor—whether the primary effect of the grant is impermissible. *Lemon,* 403 U.S. at 612. These include whether the grant will be used solely to fund secular activities and whether St. Norbert College is "pervasively sectarian" so that *no* state aid, however designated, is permissible. *See Roemer,* 426 U.S. at 755. We conclude the complaint is sufficient to state a claim that sec. 20.505(1)(m), Stats. (1989), violates the establishment clause.

Defendants' answer admits the existence of the articles of incorporation of St. Norbert College. Defendants allege, however, that the "day-to-day operations of the college are now conducted by a Board of Trustees rather than a Board of Directors and that no more than thirty percent of the Board of Trustees can be Norbertines." Finally, defendants deny that St. Norbert College is a "religious establishment" within the meaning of article I, section 18, of the Wisconsin Constitution.

We conclude this answer raises genuine issues of disputed fact, namely, whether the purpose of the grant was secular or sectarian; whether the international center is to be used solely for secular purposes; and whether St. Norbert College is so permeated with religion that secular activities cannot be separated from sec-

---

include religious activities or whether the purpose of the center is purely secular.

tarian ones. *Roemer,* 426 U.S. at 755. These questions present mixed issues of fact and law which cannot be decided without further evidentiary development. Accordingly, we conclude that the trial court erred by finding sec. 20.505(1)(m), Stats. (1989), unconstitutional on its face.

*By the Court.*—Judgment reversed and cause remanded with instructions.

EICH, C.J. *(dissenting).* In this case the trial court undertook a painstaking analysis of the applicable case law and concluded as follows:

> The foregoing cases stand for the proposition that [t]he Wisconsin Supreme Court has upheld and would uphold specific one-time grants to named church-related institutions of higher education where the public purpose of the grant is manifest, where there are sufficient controls in place to monitor the expenditure of the funds (or where monitoring is unnecessary to insure proper expenditures), and where the grantee is sufficiently insulated from the church-related university to be considered a separate entity . . ..
>
> . . ..
>
> An examination of the statute authorizing the grant in question shows that it is unconstitutional on its face, beyond a reasonable doubt. None of the safeguards which have enabled other statutes to withstand . . . challenges to similar grants are present. Each of the . . . cases which upheld such appropriations contained either comprehensive statements of legislative intent and purpose to aid in determining secular purpose or statutory restrictions against religious use . . ..
>
> Not so in the case at bar.

746

The grant to St. Norbert College is not available to any other institution, contains no restrictions on the use of the funds in question, and contains no declaration of public purpose to give guidance in interpreting the rationale behind the statute. The only evidence available is the language of the statute itself and the organization and operation of the college . . ..

Unfortunately [the language of the statute] do[es] not shed any light on what kind of an international center is being planned, what its purpose is, who will benefit from its construction and operation, who will manage and operate it, what is the composition of the Board of Directors, if any, and how they are selected, whether it will be operated under the corporate umbrella of the college, whether the state funds will be commingled with the funds of the college, how the planning money will be spent, whether any excess funds will be returned to the state, who will do the planning and under whose supervision, what benefit will accrue to the state as a whole, and so forth. These are the . . . questions which the courts have had to address in similar cases. Here, however, there is no guidance whatsoever.

Looking to the articles of incorporation of St. Norbert's College, Inc., as quoted in the plaintiffs' amended complaint, they direct that the college is to be operated "within the context of theology, philosophy, other teachings and doctrines of the Roman Catholic church and shall be in compliance with objectives and philosophy of . . . The Order of Canons Regular of Premontre, a religious order of the Roman Catholic Church." Under the articles, membership in the college corporation is limited to the members of a nonprofit corporation known as "The Premonstratensian Fathers," a religious order which, like the college corporation itself, is "operated in

747

a manner consistent with the theology, philosophy, other teaching and doctrines of the Roman Catholic Church and with the objectives and the philosophy of the Order of Canons Regular of Premontre, a religious order of the Roman Catholic Church."

The college corporation's articles also provide that its board of directors is to be appointed by the Premonstratensian Fathers, and the corporation's bylaws can only be adopted, amended or repealed by action of the Premonstratensian Fathers.

The state's answer admits all such allegations, noting only that while the members of the college corporation's board of directors were appointed by the Premonstratensian Fathers, "the day-to-day operations of the college are now conducted by a Board of Trustees . . . and that no more than thirty percent of the Board of Trustees can be Norbertines."

The Wisconsin Supreme Court has recognized that "[a]id may normally be thought of as having the primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission . . .." *State ex rel. Warren v. Nusbaum,* 64 Wis. 2d 314, 325, 219 N.W.2d 577, 583 (1974). I believe that is the case here.

The state concedes, as it must: (1) that the college corporation's articles of incorporation commit its overall operation to the "theology, philosophy . . ., teachings . . ., doctrines [and] objectives" of the Roman Catholic Church and the Order of Canons Regular of Premontre; (2) that the college's directors are named by the Premonstratensian Fathers, who are similarly committed to the philosophy, doctrines and objectives of the Church; and (3) that only the Premonstratensian Fathers can adopt,

748

amend or repeal the bylaws under which the college cor-
poration operates.

The only fact offered by the state to ameliorate the
sectarian dominance of the college's operations is the
allegation in the answer that the institution's "day-to-
day operations" are now conducted by a group of trust-
ees whose membership is only thirty percent sectarian.
It remains uncontroverted, however, that no matter who
may oversee matters on a day-to-day basis, the college's
operations are required to be conducted according to
precepts of the Roman Catholic Church and the religious
order which comprises the college corporation's entire
membership; and that order retains the sole power to
adopt, amend or repeal the bylaws under which the col-
lege operates.

Those are the pleaded facts that were considered by
the trial court, and they lead me to conclude, as Judge
Pekowsky did, that the statute cannot stand. To me
those facts lead to a single conclusion: that religion is so
pervasive a part of the college's makeup that the aid
embodied in the appropriation can only have the effect
of advancing religion. I would affirm the trial court and
hold that the challenged statute is unconstitutional on
its face.