SOO LINE RAILROAD COMPANY, Plaintiff-Respondent,

v.

DEPARTMENT OF TRANSPORTATION, Division of Highways, and Lowell Jackson, Defendants-Appellants.

Supreme Court

*No. 80–2087. Argued March 4, 1981.—Decided March 31, 1981.*

(Also reported in 303 N.W.2d 626.)

For the appellants the cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the briefs were *Bronson C. La Follette,* attorney general, and *Daniel S. Farwell,* assistant attorney general.

For the respondent there was a brief by *Reginald W. Nelson, Richard C. Ninneman* and *Whyte & Hirschboeck, S.C.,* of Milwaukee, and oral argument by *Mr. Ninneman.*

SHIRLEY S. ABRAHAMSON, J.   This appeal comes to us on certification of the court of appeals. We are reviewing a judgment of the circuit court for Dane county declaring sec. 923(48)(a), ch. 418, Laws of 1977, unconstitutional and enjoining the Wisconsin Department of Transportation from acting in accordance with that law. We affirm the judgment.

The controversy between Soo Line Railroad Company and the Department of Transportation began in February 1975 when the Department petitioned the Public Service Commission pursuant to secs. 195.28 and 195.29,

Stats. 1975,[1] for approval of a proposed at-grade railroad crossing where relocated state trunk highway 13

[1] Sec. 195.28, Stats. 1975, provides:

"195.28 **Protecting grade crossings.** Upon petition of the city council, village board, member of town board, superintendent of highways or by 5 or more freeholders in any town, village or city, or of any railroad corporation to determine whether a public highway and railroad grade crossing protects and promotes public safety, the commission may investigate and issue an appropriate order without a public hearing. If the petitioner, railroad or any interested party objects to the order and requests a hearing within 20 days after the date the order is issued, the commission shall proceed under s. 196.26. Notice of an investigation or hearing shall be served upon the highway commission, which shall be an interested party, and any recommendation it may file with the commission at or prior to a hearing, if there is one, regarding crossing protection or apportionment of the cost thereof shall be considered as evidence in the proceeding. The commission shall determine whether the existing warning devices at such crossing are adequate to protect and promote public safety. If the commission determines, either without or after a hearing, that protection is not adequate, it may order the railroad company to keep a flagman at the crossing or to install automatic signals or other suitable safety device at specific locations at such crossing. The commission may order the relocation of existing signals and devices to improve protection at a crossing. Any crossing protection installed or maintained as approved by the commission, whether by order or otherwise, shall be deemed adequate and appropriate protection for such crossing. The cost of such protection shall be apportioned by the commission between the railroad and the state on the basis of benefits received by the railroad and the public, respectively. The public's portion shall be paid by the state from the appropriation in s. 20.395 (4) (qd)."

Sec. 195.29, Stats. 1975, provides:

"195.29. **Railroad highway crossings.** (1) PETITION, HEARING, ORDER. Upon petition by the common council or board of any city, village, town or county within or bordering upon which a highway or street crosses a railroad, or a highway or street is proposed to be laid out across a railroad, or a public highway bridge across a railroad is required to connect existing streets or highways, or upon petition by any railroad whose track crosses or is about to cross, or is crossed or about to be crossed by a street or highway,

crosses the Soo Line Railroad tracks. The state owns the land upon which the crossing would be placed, and the

or upon petition by the highway commission, in cases where provision has been made for the improvement of the highway adjacent to such crossing under any state aid or federal aid law, that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, or the closing of the crossing, and the substitution of another therefor at grade or not at grade, or the removal of obstructions to the view at such crossing, the relocation of the highway, or requires the determination of the manner of making such new crossing, or of making the proposed improvement or promoting the public safety or public convenience through any other reasonable method, and praying that the same may be ordered, the commission shall give notice to the parties in interest and proceed to investigate the same and to order a hearing thereon in the manner provided by section 196.26; and the commission shall determine what, if anything, shall be done to promote the public safety and the means by which it shall be accomplished, whether by the relocation of the highway, the alteration in such crossing, approaches, mode of crossing, location of highway crossing, closing of highway crossing, with or without the substitution of another therefor, the construction of a public highway bridge, the removal of obstructions to sight at crossing, or by the use of other reasonable methods, and by whom the same shall be made, and in case of new crossings the advisability of allowing such crossings to be established and manner of making them.

"(2) APPORTIONMENT OF EXPENSE. The commission shall fix the proportion of the cost and expense of alterations, removals and new crossings, or any other work ordered, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street or highway shall sustain by reason of a change in the grade of such street or highway, or by reason of the removal of obstructions to view at such crossings, to be paid or borne by the railroad companies and the municipalities in interest. In fixing such proportion, the commission may order such cost and expense so apportioned to be paid by the parties against which the apportionment shall be made.

". . ."

The authority and jurisdiction of the Public Service Commission under secs. 195.28 and 195.29, Stats. 1975, and other transportation matters were transferred to the Wisconsin Transportation Com-

**68**

Soo Line has an easement. The Public Service Commission determined that the crossing should be an overhead crossing, not an at-grade crossing as proposed by the Department. An overhead crossing costs substantially more than an at-grade crossing.

The Public Service Commission gave consideration to public safety and determined in its Findings of Fact and Order that:

"Location of a new crossing at grade of relocated State Trunk Highway 13 and the Soo Line railroad track approximately 6,750 feet west of the existing crossing in the Village of Prentice would endanger public safety and is not advisable."

The Department sought judicial review of the Public Service Commission's order in the Dane county circuit court. The circuit court affirmed the Commission's order in October 1977. The Department did not appeal from the circuit court judgment.

Subsequently on May 18, 1978, the Wisconsin legislature enacted ch. 418, Laws of 1977 (1977 Assembly Bill 1220). Chapter 418, commonly known as the "budget review bill," consists of 289 pages and 930 sections, and is entitled:

"AN ACT to amend and revise chapter 20 of the statutes, and to make diverse other changes in the statutes relating to the state finances and appropriations, constituting the budget review bill and making appropriations."

Sec. 923 (48) (a) of Chapter 418, which the Soo Line Railroad asserts is unconstitutional, specifically prohibits the Department from constructing an overhead structure at the intersection of state trunk highway 13 and the Soo Line Railroad and specifically directs the Soo

mission pursuant to ch. 418, Laws of 1977, effective January 1, 1978.

Line Railroad and the Department to establish an at-grade crossing, the costs of which are to be paid from state appropriations "as appropriate." Sec. 923(48)(a) provides as follows:

"(48) TRANSPORTATION. (a) *Construction of the Prentice railroad overpass prohibited.* Notwithstanding section 195.28 and 195.29 of the statutes or any order made thereunder, the department of transportation is prohibited from constructing or participating in the construction of a separated grade overhead structure intersecting relocated state trunk highway 13 and the Soo Line Railroad tracks located west of the village of Prentice in Price County. The department of transportation and Soo Line Railroad Company shall establish an at-grade crossing including automatic crossing protection for the relocated highway. Costs associated with construction of the at-grade crossing and crossing protection shall be paid from the appropriations under sections 20.395(1)(td) and (te) and (3) of the statutes, as appropriate."

The Soo Line Railroad commenced the present action in the Dane county circuit court on March 17, 1980,[2] challenging the constitutionality of sec. 923(48)(a), ch. 418, Laws of 1977. The Railroad's complaint alleges that sec. 923(48)(a) violates the Wisconsin Constitution in that it constitutes a taking of the Soo Line's property right without due process of law; it impairs the obligation of contracts; it denies the Soo Line fundamental fairness and procedural due process; it denies the Soo

---

[2] On January 5, 1979, the Soo Line Railroad commenced an action against the Department of Transportation in the United States District Court for the Western District of Wisconsin alleging that sec. 923(48)(a) violates the constitutions of the United States and the State of Wisconsin. In an opinion and order dated April 7, 1980, United States District Judge James E. Doyle, concluding that the federal court had jurisdiction of this controversy, stayed the federal court action pending a determination of the state law issues by the Wisconsin state courts.

Line the equal protection of the laws; it is a private bill, or in the alternative, it is a general bill not uniform in its operation; it constitutes an unlawful encroachment upon the judicial branch by the legislative branch of government; and it violates the exclusive jurisdiction granted to the Public Service Commission. Ruling on motions for summary judgment, the Dane county circuit court concluded that sec. 923 (48) (a) violated the constitutional guarantees of due process and enjoined the Department from acting thereunder.

We conclude that sec. 923 (48) (a) is a private or local bill, and is unconstitutional because its enactment did not comply with sec. 18, art. IV of the Wisconsin Constitution.

Sec. 18, art. IV, of the Wisconsin Constitution expressly prohibits a private or local bill from embracing more than one subject and requires the subject of the bill to be expressed in the title. Sec. 18, art. IV, provides as follows:

"*Title of private bills.* No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

Sec. 18, art. IV of the constitution was adopted as part of the original state constitution and has remained unchanged. *See* Journal of the Convention to Form a Constitution for the State of Wisconsin (1846), p. 218. The regulation of private or local bills by constitutional provision is not unique to the Wisconsin Constitution,[3] and

---

[3] Sec. 15, art. 3, of the Constitution of the State of New York, is exactly the same as sec. 18, art. IV, Wis. Const.

For constitutional provisions of other states relating to special, local or private laws, see *Index Digest to State Constitutions* (Columbia University Legislative Drafting Research Fund 2d ed. 1959).

"Practically all state constitutions purport to govern the enactment of special or local legislation. The approaches vary, the

sec. 18, art. IV is not the only provision in the Wisconsin Constitution regulating private legislation.[4]

State constitutional provisions regulating private, local, and special legislation were adopted in response to the changing conditions in which 19th century state legislatures found themselves. State legislatures were under

---

results are uneven, and the litigation is voluminous." Sentell, *When is a Special Law Unlawfully Special*, 27 Mercer L. Rev. 1167 (1976).

[4] See, *e.g.*, secs. 31 and 32, art. IV, Wis. Const., adopted in 1871, which provide as follows:

"Special and private laws prohibited. SECTION 31. The legislature is prohibited from enacting any special or private laws in the following cases:

1st. For changing the name of persons or constituting one person the heir at law of another.

2d. For laying out, opening or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands may be granted by congress.

3d. For authorizing persons to keep ferries across streams at points wholly within this state.

4th. For authorizing the sale or mortgage of real or personal property of minors or others under disability.

5th. For locating or changing any county seat.

6th. For assessment or collection of taxes or for extending the time for the collection thereof.

7th. For granting corporate powers or privileges, except to cities.

8th. For authorizing the apportionment of any part of the school fund.

9th. For incorporating any city, town or village, or to amend the charter thereof. (As amended 1892).

"General laws on enumerated subjects. SECTION 32. The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state."

For a discussion of the adoption of the 1871 amendments and their effect on the Wisconsin laws, see Kuehnl, *The Wisconsin Business Corporation* 165–171 (1959).

pressure from their constituents to act on a multitude of subjects. The volume of laws drastically increased, and private or local laws dramatically outnumbered the general laws.[5] The proliferation of laws of limited applicability created the specter of favoritism and discrimination and diverted the legislature's attention from matters of public, state-wide importance. The constitutional proscriptions against special, private or local legislation were intended to prevent the granting of special privileges or the imposition of special disabilities and to encourage the legislature to devote its time to the interests of the state at large. Hurst, *The Growth of American Law: The Law Makers,* 30, 66, 79, 229, 233–34 (1950) ; Cloe & Marcus, *Special and Local Legislation,* 24 Ky. L.J. 351, 355–358 (1936). The constitutional limitations seek to insure that the legislature and the people of the state are advised of the real nature and subject matter of the legislation being considered to avoid fraud or surprise.

Sec. 18, art. IV of the Wisconsin Constitution is designed to protect the public from legislative enactment of statutes whose effect is unknown to legislators and to the people of the state and to direct the legislator's attention to the proposed law to forestall improvident legislation, fraud and surprise. This court expressed the reasoning underlying sec. 18, art. IV, Wis. Const., as follows:

". . . The framers of the constitution, in adopting sec. 18, art. IV, intended to guard against the danger of legislation, affecting private or local interests, being smug-

---

[5] The Laws of Wisconsin and the Private and Local Laws of Wisconsin were bound separately until the 1870's. The large volume of private or local laws decreased after the adoption of the 1871 constitutional amendments quoted in note 4 *supra.*

For a discussion of private or local laws in Wisconsin, Smith, *The History of Wisconsin: From Exploration to Statehood* 382–383 (1973) ; Hurst, *Law and Economic Growth* 243, 253, 343, 382 (1964) ; Bunn and Gallagher, *Legislative Committee Review of Administrative Rules in Wisconsin,* 1977 Wis. L. Rev. 935, 944, 956–958.

gled through the legislature under misleading titles, by requiring every bill affecting such interests to be under a title likely to call attention of the lawmakers to its character, and likewise the attention of the people affected, to the end that every member of the legislature may intelligently participate in considering such bill and all objections thereto may be presented." *Milwaukee County v. Isenring*, 109 Wis. 9, 23, 85 N.W. 131 (1901).

The limitation imposed by sec. 18, art. IV, is mandatory, not directory.

". . . This Court very early recognized the importance of that limitation upon legislative power, and said that the evident purpose of the framers of the constitution was that it should be given full force and effect, and that there is no justification for treating it as merely directory or sanctioning evasions of it in any way." *Milwaukee County v. Isenring, supra*, 109 Wis. at 23.

The constitutional language embodied in sec. 18, art. IV, is easily understood but not easily applied. The terms local and private refer to laws which apply to particular persons, places or things. An accurate, comprehensive definition of these terms has, however, eluded the courts. The task of deciding what constitutes a local or private law as opposed to a general law has been the source of difficulty in this state and in others.[6]

To determine whether a law is a local law, this court has in some cases focused on the territorial scope of the legislation. A law is local if it applies to a particular lo-

---

[6] See, *e.g.*, Horack, *Special Legislation: Another Twilight Zone*, 12 Ind. L.J. 109 (1936); Cloe and Marcus, *Special and Local Legislation*, 24 Ky. L. J. 351 (1936); Sentell, *When is a Special Law Unlawfully Special*, 27 Mercer L. Rev. 1167 (1976); *Legislation—General and Special Laws in Texas*, 2 Tex. Tech. L. Rev. 336 (1971); 2 Sands, *Sutherland Statutory Construction* ch. 40 (1973); *Schuyler v. So. Mall Constructors*, 32 A.D.2d 454, 303 N.Y.S.2d 901 (1969); *City of Rye v. Met. Trans. Auth.*, 24 N.Y.S.2d 627, 249 N.E.2d 429 (1969).

cality to the exclusion of others. In *Milwaukee County v. Isenring*, 109 Wis. 9, 19–20, 85 N.W. 131 (1901), this court explained:

". . . An act is 'general,' as contradistinguished from and inconsistent with 'local,' . . . only when its operation extends to the whole state, or perhaps to the whole of some class of localities therein . . . .
" '[I]f the act be local as to territory, no matter how public it may be in its character, it can contain but one subject, and that must be expressed in the title.' . . ." Quoting Sedgwick, *Stat. & Const. Law*, p. 529.[7]

In *State ex rel. Richter v. Chadbourne*, 162 Wis. 410, 156 N.W. 610 (1916), this court found a law limited in territorial application violative of sec. 18, art. IV, stating:

"The law in question deals with the establishment of a superior court in Fond du Lac county and the abolishment of its county court. It is limited in its effect to the boundaries of Fond du Lac county and therefore local in character. True, it is public or general in the sense that it may affect publicly or generally all the people of the county or outside thereof, but it deals with the establishment and abolition of courts of a specified locality which does not constitute a class for purposes of legislation. So within the rule laid down in the case of *Milwaukee Co. v. Isenring, supra,* it must be held to be a local law coming within the provisions of sec. 18, art. IV, of the constitution." 162 Wis. at 414, 156 N.W. at 611.

*See also Whitefish Bay v. Milwaukee County*, 224 Wis. 373, 377, 271 N.W. 416 (1937) ; *Estate of Bulewicz*, 212 Wis. 426, 433, 249 N.W. 534 (1933).

---

[7] The court quoted *People v. O'Brien*, 38 N.Y. 193 (1868), with approval, as follows:
" 'The framers of the Constitution must be presumed to have used the term "local" in the sense it which it is generally understood. In this sense, any law limited to any particular locality is local, irrespective of the population of such locality, whether great or small.' " *Milwaukee County v. Isenring, supra,* 109 Wis. at 21.

The Department points out that the test of what is a private or local law is more difficult than these cases suggest. The Department relies on *Monka v. State Conservation Com'n*, 202 Wis. 39, 231 N.W. 273 (1930). In *Monka* the court rejected plaintiff's contention that a law applicable only to Lake Michigan and not to all outlying waters was a local law. The court concluded that a law applicable to Lake Michigan was not a "local law" merely because it operates only upon a particular section of the state. Where the subject matter of the enactment is of general and state-wide concern, the court held the law is not a local bill within the meaning of sec. 18, art. IV. The court expressly stated that it was supplementing the definition of local law as set forth in *Isenring*, to state that the court considered the operation of a bill to extend to the whole state "when the subject thereof is such that the state itself has an interest therein as proprietor, or as trustee, or in its governmental capacity, for the benefit or in the interest of the general public." *Monka, supra*, 202 Wis. at 46. The Department argues that inasmuch as sec. 923 (48) (a) involves state owned land and the state-wide public interest in highway safety, the "territorial definition" of local law is not applicable and sec. 923 (48) (a) is not a private or local bill.

This court has also focused on the application of the bill to particular persons and on classifications in the bill to determine whether a law is a "private or local" law. While a local law usually refers to a law relating to a geographical place, a private law is generally viewed as one applying to or affecting a particular individual or entity. 2 Sands, *Sutherland on Statutory Construction* sec. 40.01, p. 137 (1973). In *State ex rel. Joint School District v. Nyberg*, 183 Wis. 215, 197 N.W. 724 (1924), where the challenged law "affected school districts consolidated or annexed during the period intervening January 1, 1921, and July 2, 1923, and no others," the court held that because the law "affected a definite, ascertain-

able, fixed, closed, and limited class or group of school districts," the "act was a private or local law" and was invalid because it was passed in violation of sec. 18, art. IV. The parties cite no Wisconsin case and our independent study reveals no Wisconsin case, further amplifying what constitutes a too limited classification which renders a bill a "private law" under sec. 18, art. IV. This result is not surprising. With the advent of the urban, industrial society, with the adoption of general laws on such matters as incorporation and divorce, and with the developing notions of due process and equal protection of the laws, "private" laws in the historical sense of the term as a law favoring or imposing disabilities on one or a few persons or entities ceased to become a legislative phenomenon or an issue before the courts. Hurst, *The Growth of American Law: The Law Makers* 233 (1950).

Mindful of the teachings of these cases and of the rule that a statute is presumed constitutional and that the challenger must prove the law to be unconstitutional beyond a reasonable doubt, *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843 (1978), we consider the constitutionality of sec. 923(48)(a). By its language, sec. 923(48)(a) relates to a specific point on a specific highway. Although many citizens of this state and other states may drive on state trunk highway 13, or use the Soo Line, sec. 923(48)(a) directly and immediately affects a particular entity, the Soo Line Railroad. The Soo Line Railroad is directly affected by sec. 923(48)(a); the other railroads are not. The law affects the expenses that the Soo Line Railroad may incur in the construction of the structure at this crossing, and the Soo Line Railroad argues that the law may affect its liability for personal or property damage incurred by the public at the crossing. Sec. 923(48)(a) also reverses a decision reached by a specific administrative agency and affirmed by a particular court

relating to a particular crossing at a particular location involving a particular railroad. This administrative agency decision was reached in compliance with and pursuant to the laws made and provided by the legislature. Sec. 923 (48) (a) is without question a legislative response to a unique problem. It is difficult to conceive of a legislative enactment more particularly addressed to a specific geographical location or a specific entity. In light of the definition of private or local law set forth in our prior cases and the rationale of sec. 18, art. IV, Wis. Const., we conclude that sec. 923 (48) (a) is a private or local law.

We must now determine whether ch. 418, Laws of 1977, meets the requirements which sec. 18, art. IV, Wis. Const., imposes on sec. 923 (48) (a), a private or local enactment. The law cannot embrace more than one subject and the subject must be expressed in the title.

Ch. 418, Laws of 1977, is, as we noted previously, the budget review bill. Without elaborating, it is obvious from the nature of the act, the length of the act and the numerous sections in the act, that the budget review bill embraces many subjects in addition to the question of the Soo Line Railroad crossing.

The title of 418 is "AN ACT to amend and revise chapter 20 of the statutes, and to make diverse other changes in the statutes relating to state finances and appropriations, constituting the budget review bill and making appropriations."

This court has explained how to test the sufficiency of the title of a private or local bill as follows:

"Probably as comprehensive a rule as can be found stated in the books, for testing the sufficiency of a title to a private or local legislative act, is the one deduced from the authorities by the New York court of appeals and approved in *Milwaukee County v. Isenring*, 109 Wis. 9: When one, reading a bill with the full scope of the

title thereof in mind, comes upon provisions which he could not reasonably have anticipated because of their being in no way suggested by the title in any reasonable view of it, they are not constitutionally covered thereby." *Diana Shooting Club v. Lamoreux,* 114 Wis. 44, 50–51, 89 N.W. 880 (1902).

It is clear that the title of ch. 418 gives no hint that the act regulates the crossing of the Soo Line Railroad tracks and state trunk highway 13. The requirements of sec. 18, art. IV, Wis. Const., have not been satisfied.

■

We conclude that sec. 923 (48) (a) is a private or local law; that the enactment of sec. 923 (48) (a) as part of ch. 418, Laws of 1977, violates sec. 18, art. IV, Wis. Const.; and that sec. 923 (48) (a) is unconstitutional.[8] For this reason we affirm the judgment of the circuit court. Because we hold sec. 923 (48) (a) unconstitutional on the grounds set forth, we need not discuss, and we do not decide, the correctness of the grounds upon which the circuit court concluded the section unconstitutional or of the other grounds urged by the Soo Line Railroad for declaring sec. 923 (48) (a) unconstitutional.

*By the Court.*—Judgment affirmed.

---

[8] The invalidity of sec. 923(48) (a) does not affect the validity of the remainder of ch. 418, Laws of 1977. *Bence v. Milwaukee,* 84 Wis.2d 224, 233–234, 267 N.W.2d 25 (1978).