LAKE COUNTRY RACQUET AND ATHLETIC CLUB, INC.,
De-Le of Green Bay, Inc., Bluemound Land
Partnership, LLP, Glen Park Associates and
Wisconsin Athletic Club, Inc.,
Plaintiffs-Appellants,

v.

Michael L. MORGAN Secretary of Revenue
and Wisconsin Department of Revenue,
Defendants-Respondents,

YMCA OF METROPOLITAN MILWAUKEE, INC.,
Waukesha Family YMCA, Oconomowoc
Town and Country YMCA and
Greater Green Bay YMCA, Inc.,
Intervenors-Defendants-Respondents.

Court of Appeals

*No. 2004AP3061. Submitted on briefs May 23, 2005.
—Decided January 26, 2006.*

2006 WI App 25

(Also reported in 710 N.W.2d 701.)

500

501

503

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert L. Gordon* of *Michael Best & Friedrich LLP*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas C. Bellavia*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the intervenors-defendants-respondents, the cause was submitted on the brief of *Timothy C. Frautschi, Rebecca E. Wickhem* and *Patrick M. Kuhlmann* of *Foley & Lardner, LLP*, of Milwaukee.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J. Lake Country Racquet and Athletic Club, Inc., and four other for-profit health clubs (collectively "Lake Country") appeal from a partial summary judgment and a summary judgment dismissing their constitutional challenges to the portion of Wɪs.

STAT. § 70.11(12)(a) (2003–2004)[1] exempting from taxation property owned by Young Men's Christian Associations (YMCAs).[2] Lake Country contends these provisions violate the ban on private legislation in article IV, section 18 of the Wisconsin Constitution and the equal protection guarantees of the state and federal constitutions.[3] We reject both of these challenges and affirm.

## *Background*

¶ 2. The following facts are taken from the parties' affidavits and other materials. There are thirty YMCAs in thirty different communities in Wisconsin. Each is a separately incorporated non-profit organization, and all belong to the National Council of Young Men's Christian Associations of America (YMCA-USA). Article II, section 2(a) of the YMCA-USA Constitution provides that to maintain membership in the YMCA-USA, local YMCAs must accept the following statement of purpose: "The Young Men's Christian Association we regard as being in its essential genius a worldwide fellowship united by a common loyalty to Jesus Christ for the purpose of developing Christian personality and

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] These provisions also exempted from taxation property owned by Young Women's Christian Associations (YWCAs). However, Lake Country does not challenge the exemption for YWCAs.

[3] Lake Country also summarily asserts that the challenged statute violates two other provisions of the state constitution, the Uniformity Clause of article VIII, section 1, and article IV, section 31(6). Because these arguments are not sufficiently developed we will not address them. *See Rizzuto v. Cincinnati Ins. Co.*, 2003 WI App 59, ¶ 21, 261 Wis. 2d 581, 659 N.W.2d 476.

building a Christian society." The Constitution's preamble states that a goal of the YMCA-USA is "[t]o appreciate that health of mind and body is a sacred gift and that physical fitness and mental well-being are conditions to be achieved and maintained." Accordingly, YMCAs maintain fitness centers that offer the same types of facilities as for-profit health clubs.

¶ 3. In addition, the various YMCAs in Wisconsin offer many different types of community programming. From the YMCAs' submissions, these include: programs for persons with special needs; swimming lessons; child care services; leadership development programs for teens; after- and before-school care; fitness and social activities for seniors; pre-school programs; mentoring programs; and civic education programs for youths. YMCAs also provide financial assistance to many qualifying program participants based on financial need.

¶ 4. Prior to adoption of the 2001 Budget Bill, the property tax status of YMCAs was determined by local tax assessors' evaluation of their benevolent status under WIS. STAT. § 70.11(4) (1999–2000)[4]. Historically,

---

[4] WISCONSIN STAT. § 70.11 (1999–2000) provided, in relevant part:

Property exempted from local property taxes is:

. . . .

(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively . . . by churches or religious, educational or benevolent associations . . . . Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject to the 10–acre limitation but shall be subject to a 30–acre limitation. Property that is exempt from taxation under this subsection and is leased remains exempt from taxation only if, in addition to the requirements specified in the introductory phrase of this section, the lessee does not discriminate on the basis of race.

individual assessors had exempted local YMCAs from property taxes under this statute.

¶ 5. In late 1999, YMCAs in La Crosse, Wausau and Milwaukee were put on notice that local assessors would be re-examining their tax-exempt status. Collectively, state YMCAs sought legislative action to remove from local assessors the responsibility to determine local YMCAs' tax status and establish a statutory exemption for all YMCAs. In early 2001, companion bills were introduced in the Senate and Assembly adding YMCAs to the list of national benevolent organizations exempted from property taxation under WIS. STAT. § 70.11(12)(a). That spring, the Joint Finance Committee voted to add the YMCA exemption as an amendment to the 2001 Budget Bill. 2001 SB 55, May 16, 2001 executive session, Motion 123. The YMCA exemption was adopted by the legislature as a part of the Budget Bill and signed into law by the governor in August 2001. 2001 Wis. Act 16, §§ 2103g and 2103k.[5]

---

[5] As amended by 2001 Wis. Act 16, WIS. STAT. § 70.11(12) provides, in relevant part:

**Certain charitable organizations.** (a) Property owned by units which are organized in this state of the following organizations: the Salvation Army; the Boy Scouts of America; the Boys' Clubs of America; the Girl Scouts or Camp Fire Girls; the Young Men's Christian Association, not exceeding 40 acres for property that is located outside the limit of any incorporated city or village and not exceeding 10 acres for property that is located inside the limit of any incorporated city or village; the Young Women's Christian Association, not exceeding 40 acres for property that is located outside the limit of any incorporated city or village and not exceeding 10 acres for property that is located inside the limit of any incorporated city or village; or any person as trustee for them of property used for the purposes of those organizations, provided no pecuniary profit results to any individual owner or member.

507

Additional facts about the legislature's consideration of the bill will be set forth in the analysis.

¶ 6. Lake Country sued to challenge the constitutionality of the YMCA exemption on multiple grounds. The court permitted four YMCAs to intervene as defendants to the suit. Lake Country moved for judgment on the pleadings on its claim that the statute was prohibited "private legislation" under article IV, section 18. Its motion for judgment on the pleadings included the legislative history of the bill. The YMCAs also moved for partial summary judgment on the private legislation claim. The court construed Lake Country's motion as a motion for partial summary judgment.[6] The court denied Lake Country's motion and granted the YMCAs'

---

[6] Lake Country contends the trial court erred by converting its motion for judgment on the pleadings regarding its article IV, section 18 challenge to a motion for partial summary judgment. Some background is necessary here. Lake Country appended legislative history documents to its motion for judgment on the pleadings. Lake Country asserted that legislative history documents were not "material outside of the pleadings" within the meaning of WIS. STAT. § 802.06(3), citing *Freedom from Religion Foundation v. Thompson*, 164 Wis. 2d 736, 476 N.W.2d 318 (Ct. App. 1991). In *Freedom from Religion Foundation*, we stated that "[t]he phrase 'matters outside the pleadings' should not be read so broadly so as to include items of legislative history, which do not concern evidentiary facts and which could be introduced without supporting affidavits." *Freedom from Religion Foundation*, 164 Wis. 2d at 740 n.4.

However, the State argued in its brief that Lake Country's inclusion of legislative history documents converted Lake Country's motion for judgment on the pleadings to a motion for partial summary judgment. Consequently, the State appended numerous exhibits to its brief against Lake Country's motion. The YMCAs moved for partial summary judgment. Their combined brief opposing Lake Country's motion and supporting their motion appended additional exhibits. In its combined brief

partial summary judgment motion. Lake Country then moved for summary judgment on the remaining claims, and the State and YMCAs cross-moved for summary judgment. The court denied Lake Country's motion and granted the State and YMCAs' motion for summary judgment. Lake Country appeals.

## *Analysis*

¶ 7. We review a circuit court's grant of summary judgment de novo, applying the same methodology as

in reply and in opposition, Lake Country maintained that its inclusion of legislative history documents did not convert its motion on the pleadings to a motion for partial summary judgment. However, it took the view that the State's submissions related only to legislative history, while the YMCAs' submissions included non-legislative material that exceeded the scope of material responsive to a motion on the pleadings under *Freedom from Religion Foundation.*

We conclude that the circuit court properly construed Lake Country's motion for judgment on the pleadings to be a motion for partial summary judgment. This is because Lake Country does not oppose the State's submissions, and we construe these as exceeding the legislative history exception to WIS. STAT. § 802.06(3) stated in *Freedom from Religion Foundation.*

We also observe that the type of constitutional issue considered in *Freedom from Religion Foundation*, an alleged violation of the Establishment Clause, differs significantly from a challenge under article IV, section 18. The former relates to the substance of a statute; the latter implicates the procedure used by the legislature in passing a statute. As Lake Country itself acknowledges, an article IV, section 18 challenge requires a court to "expand[] the limited universe of relevant facts" to consider whether the legislature "smuggled" or "logrolled" the bill. Without stating precisely which types of materials are relevant to this injury, we believe that some types of materials outside of legislative history are relevant.

509

the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 8. Lake Country alleges Wis. Stat. § 70.11(12)(a) is constitutionally infirm on four separate grounds, which we address in turn. A challenge to the constitutionality of a statute is a question of law subject to de novo review. *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 10, 245 Wis. 2d 86, 630 N.W.2d 141.

### A. Article IV, section 18 of the Wisconsin Constitution

¶ 9. Lake Country contends Wis. Stat. § 70.11(12)(a) violates the state constitution's prohibition on private legislation. Article IV, section 18 of the Wisconsin Constitution provides that "[n]o private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." A purpose of article IV, section 18 is to "guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature." *Davis v. Grover*, 166 Wis. 2d 501, 519, 480 N.W.2d 460 (1992) (citation omitted). Section 18 also protects against "internal logrolling," the legislative practice of bundling several unrelated issues, none of which could be passed singly, and securing passage by a combination of the legislative factions who favor separate pieces of the legislation. *Id.* at 519, n.7 (citation omitted).

¶ 10. When deciding a challenge to legislation under article IV, section 18, we employ a two-part

analysis. *Davis*, 166 Wis. 2d at 520. First, we must determine whether the process used by the legislature was adequate to entitle the bill to the presumption of constitutionality usually afforded legislative enactments. *Id.* Second, we must decide whether the legislation is private and/or local and, if so, whether it violates the single-subject, clear-title requirements of section 18. *Id.*

### 1. Presumption of Constitutionality

¶ 11. An article IV, section 18 challenge to a legislative enactment attacks the propriety of the process used by the legislature to adopt the legislation. *See Brookfield v. Milwaukee Sewerage*, 144 Wis. 2d 896, 912 n.5, 426 N.W.2d 591 (1988). For this reason, courts will not afford legislation challenged on these grounds a presumption of constitutionality unless the record shows that the legislature adequately considered the legislation in question. *City of Oak Creek v. Department of Natural Resources*, 185 Wis. 2d 424, 437, 518 N.W.2d 276 (Ct. App. 1994). To "indulge in a presumption of constitutionality" in a challenge under article VI, section 18 without first determining that the legislature fully considered the proposal "would make a mockery of [section 18's] procedural constitutional requirement." *Brookfield*, 144 Wis. 2d at 912 n.5. However, if it is determined that the "legislation [was] passed after full consideration," the presumption of constitutionality should be applied so as not to "err . . . by substituting our judgment for that of an attentive legislature." *Id.* at 918 n.6.

¶ 12. The parties dispute which facts may be considered when determining if a measure was "adequately considered." Lake Country cites the *Davis*

explanation that a section 18 challenge concerns only the "form in which the legislation is enacted," contending that this means that we may consider only the legislative history of the bill. The State and YMCAs respond that we may also consider press coverage and lobbying efforts pertaining to the bill because these are relevant to whether the bill was "smuggled" through the legislature. Accordingly, they cite evidence of frequent legislative contacts and media advertising by groups supporting and opposing the measure, as well as press reports.

¶ 13. As we noted earlier in note 6, Lake Country concedes that the State's submissions in response to Lake Country's motion are relevant to the issue of whether the bill was adequately considered. It is on these submissions alone that we conclude that the legislature adequately considered the measure. We therefore need not decide here precisely which types of evidence are permissible under *Davis*.

¶ 14. We turn now to the facts of the legislature's consideration of the bill taken from the submissions of the State and Lake Country. On March 1, 2001, Representative John Gard circulated a request for legislative co-sponsors to a single-subject bill exempting from taxation property of YMCAs. The request included a Legislative Reference Bureau analysis of the proposal. Opponents of the legislation, including representatives of the Wisconsin Merchants Federation and the Alliance of Cities, circulated a two-page memo to all legislators explaining their reasons for opposing the bill. In response, Representative Gard and the bill's co-author, Senator Gary George, sent a letter to all legislators countering the arguments made in the opponents' memo.

¶ 15. On March 20, 2001, and March 26, 2001, identical bills exempting YMCAs from property taxation were introduced in the Senate and Assembly. Sixty-one of the Assembly's ninety-nine members and thirteen of the Senate's thirty-three members cosponsored at least one of the companion bills.

¶ 16. During April 2001, the Legislature's Joint Finance Committee held six public hearings at various locations around the state on the 2001 State Budget Bill. In apparent anticipation that the YMCA exemption might be added to the Budget Bill, supporters and opponents of the YMCA exemption testified and/or registered their views at each hearing.

¶ 17. On May 9, 2001, the Assembly Ways and Means Committee held a public hearing on Assembly Bill 250. YMCA representatives testified in favor of the legislation, and several representatives of private health clubs, business associations and local government associations spoke in opposition.

¶ 18. During a May 16, 2001 executive session, the Joint Finance Committee approved two motions incorporating the proposed YMCA exemption into the Budget Bill. Among those voting for the YMCA exemption amendment were four senators who had not cosponsored Assembly Bill 250 or Senate Bill 98. On June 18, 2001, sections 2103g and 2103k were submitted to the legislature as a part of the amended Budget Bill. *See* Senate Substitute Amendment 1 to 2001 Senate Bill 55. On August 30, 2001, the two sections were enacted into law without further change as a part of 2001 Wisconsin Act 16.

¶ 19. We conclude that this record demonstrates that the legislature adequately considered the legislation for purposes of article IV, section 18. Most signifi-

cantly, a majority of the members of the Assembly co-sponsored a single-subject bill exempting YMCAs from property taxation before the measure was added to the Budget Bill. Similarly, a majority of senators either co-sponsored the stand-alone bill (thirteen) or considered and voted for the proposal as members of the Joint Finance Committee (four). We presume that a legislator who sponsors a bill has adequately considered the proposal. Likewise, we apply the same presumption to a committee member who votes to recommend a proposal to the full legislature. Because a majority of the members of both houses adequately considered the measure, we conclude that, collectively, the legislature gave adequate consideration to the bill.

¶ 20. Additionally, we note that all legislators were informed via memo by the bill's supporters and opponents of the policy reasons to oppose or support the bill. At budget hearings around the state, and at a hearing devoted to Assembly Bill 250, members of the public voiced their concerns about the YMCA exemption. We share the state supreme court's concern that multi-subject bills such as the biennial state budget "by their nature are subject to a greater susceptibility of smuggling and logrolling." *Davis*, 166 Wis. 2d at 519. However, "the fact that a multi-subject bill contains a program such as [the YMCA exemption] does not necessarily condemn the process in which the program was enacted as unconstitutional." *Id.* at 520. We therefore conclude that the legislature adequately considered the bill and, thus, that the bill is entitled to a presumption of constitutionality.

■■■■■

¶ 21. Lake Country correctly observes that a report on the YMCA exemption was not obtained from the Joint Survey Committee, as required by Wis. Stat.

514

§ 13.52(6).[7] Lake Country calls this rule "[the legislature's] own statutory requirement for intelligent participation in tax exemption legislation." We disagree. The failure of the legislature to follow its own, non-constitutionally mandated operating rules does not provide an independent basis to declare a statute unconstitutional. *State ex rel. La Follette v. Stitt*, 114 Wis. 2d 358, 365, 338 N.W.2d 684 (1983). As the State notes, the "adequate consideration" rule is a judicial creation, and the legislature's statutory requirements do not define this standard. Instead, the issue of whether the legislature has adequately considered a measure depends on the unique circumstances of the legislature's consideration of the bill and may take into account many factors. *See Davis*, 166 Wis. 2d at 522–23.

## 2. Private Legislation

¶ 22. We turn to whether the statute is prohibited private legislation. We have noted that the proposal was

[7] WISCONSIN STAT. § 13.52(6) provides:

**Report.** Upon the introduction in either house of the legislature of any proposal which affects any existing statute or creates any new statute relating to the exemption of any property or person from any state or local taxes or special assessments, such proposal shall at once be referred to the joint survey committee on tax exemptions by the presiding officer instead of to a standing committee, and such proposal shall not be considered further by either house until the joint survey committee on tax exemptions has submitted a report, in writing, setting forth an opinion on the legality of the proposal, the fiscal effect upon the state and its subdivisions and its desirability as a matter of public policy and such report has been printed as an appendix to the bill and attached thereto as are amendments. Such printing shall be in lieu of inclusion in the daily journal of the house in which the bill was introduced.

not adopted as a single-subject bill, but as a part of the multi-subject Budget Bill. Article IV, section 18 prohibits private legislation which is not approved as a single-subject bill. Therefore, the only question for us to resolve is whether the proposal is, in fact, private legislation. Because we have determined that the bill is entitled to a presumption of constitutionality, Lake Country bears the burden of proving the statute is private legislation beyond a reasonable doubt. *See Davis*, 166 Wis. 2d at 524.

¶ 23. Courts apply one of two tests when determining whether a bill is private legislation, depending on whether the bill is "specific to any person, place or thing" or is instead based on "classifications." *Davis*, 166 Wis. 2d at 524–25. Lake Country argues, and the State concedes, that the YMCA exemption is "specific" in nature.[8] To pass muster under article IV, section 18, "specific" legislation must: (1) in its "general subject matter relate[] to a state responsibility of statewide dimension; and (2) [in] its enactment . . . have a direct and immediate effect on a specific statewide concern or interest." *Milwaukee Brewers Baseball Club v. Wisconsin Dep't of Health and Social Servs.*, 130 Wis. 2d 79, 115, 387 N.W.2d 254 (1986). To appeal to a specific concern, the bill must be enacted for a purpose more particular than generic legislative concerns such as safety, health, welfare, morals and security. *Id.*

---

[8] The YMCAs do not concede this point, however, arguing that because the thirty YMCA units in Wisconsin are separately incorporated and are united only by a common mission the legislation is not specific. We disagree. The bill is limited in its application to YMCAs, not non-profit health facilities or charitable organizations, for example. It is specific legislation for the purposes of this analysis.

¶ 24. In *Soo Line Railroad Co. v. Department of Transportation*, 101 Wis. 2d 64, 76–77, 303 N.W.2d 626 (1981), a provision contained in the 1977 Budget Bill prohibiting the transportation department from building an overpass on the Soo Line at a certain site was found to be unconstitutional private (and local) legislation. The provision reversed, in effect, a decision of the Public Service Commission ordering the construction of the overpass. *Id.* The *Soo Line* court explained:

> Although many citizens of this state and other states may drive on state trunk highway 13, or use the Soo Line, [the statute] directly and immediately affects a particular entity, the Soo Line Railroad. The Soo Line Railroad is directly affected by [the statute]. The other railroads are not. . . .[The statute] also reverses a decision reached by a specific administrative agency and affirmed by a particular court relating to a particular crossing at a particular location involving a particular railroad. This administrative agency decision was reached in compliance with and pursuant to the laws made and provided by the legislature. [The statute] is without question a legislative response to a unique problem. It is difficult to conceive of a legislative enactment more particularly addressed to a specific geographical location or a specific entity. In light of the definition of private or local law set forth in our prior cases and the rationale of sec. 18, art. IV, Wis. Const. we conclude that [the statute] is a private and local law.

*Id.*

¶ 25. In *City of Oak Creek*, 185 Wis. 2d at 442, we concluded that a statute challenged under article IV, section 18 that exempted a specific project in Oak Creek from compliance with state environmental requirements did not have an immediate or direct effect on any specific statewide interest and was ultimately prohibited private legislation. We reasoned:

517

Although it cannot be disputed that legislation which seeks to protect and regulate the state's navigable waterways is of statewide concern, the same cannot be said of legislation that exempts one particular area, and specifically one particular project, from compliance with the statewide requirements. While the overall regulatory scheme of chapter 30 has statewide significance, and was enacted in the public's interest, we conclude that the exemption granted to the City of Oak Creek for the Crawfish Creek project was not enacted for the benefit of, or in the interest of, the general public. In sum, the legislation does not have a direct and immediate effect on a specific statewide concern or interest. Any direct and immediate effect that this legislation has is upon the expenses that may be incurred by the City of Oak Creek.

*Id.*

¶ 26. However, in *Milwaukee Brewers*, 130 Wis. 2d at 118–120, the state supreme court concluded that a bill challenged under article IV, section 18 directing a state agency to build a prison on a particular site was not private or local legislation. Applying the "specific" legislation test, the *Milwaukee Brewers* court concluded that: (1) prison construction and maintenance was a statewide responsibility of a statewide dimension; (2) the legislation affected a specific state concern or interest, prison overcrowding; (3) and would impact that concern immediately and directly by adding more prison capacity. *Id.* at 119–20.

¶ 27. Lake Country contends that *Soo Line* and *Oak Creek* control here. It asserts that, like the statute in *Soo Line*, which affected only one railroad company, the statute here affects only two organizations, YMCAs and YWCAs. Further, Lake Country argues that, as in *Oak Creek*, 185 Wis. 2d at 442, the legislation here "was

not enacted for the benefit of, or in the interest of, the general public," but, in this case, for the benefit of YMCAs and YWCAs.

¶ 28. We conclude that Lake Country has not shown beyond a reasonable doubt that the statute does not relate to a state responsibility of statewide dimension, or that its passage would not have a direct and immediate impact on a statewide concern or interest. This case, unlike *Soo Line* and *Oak Creek*, concerns a benevolent organization that provides a broad range of programming to the public. *See* ¶¶ 2–3, *supra.* We have observed that by enacting exemptions for benevolent groups "[t]he legislature has recognized that some organizations actually serve a public rather than a private purpose and should be relieved of their tax burden." *International Foundation of Emp. Ben. Plans, Inc. v. City of Brookfield*, 95 Wis. 2d 444, 454, 290 N.W.2d 720 (Ct. App. 1980). By adding YMCAs and YWCAs to the short list of benevolent organizations that are tax exempt under WIS. STAT. § 70.11(12), the legislature has made a judgment about the benevolent mission of YMCAs and YWCAs.

¶ 29. We conclude the YMCA exemption relates to a statewide responsibility of statewide dimension. Whether to exempt property of certain benevolent organizations is a responsibility of the state. Because YMCAs and YWCAs are located in communities throughout Wisconsin and their programs serve thousands of individuals, whether these particular entities are exempt from taxation is an issue of statewide dimension.

¶ 30. We also conclude that the statute has an immediate and direct affect on a specific statewide concern or interest. Whether YMCAs are exempt from property taxation directly and immediately affects the

resources available to YMCAs to provide benevolent programming to local communities. As described earlier, ¶¶ 2–3, *supra,* the record supports a view that these programs are extensive and reach many Wisconsin residents. In addition, the adoption of a uniform approach to taxation of YMCAs had an immediate and direct affect on YMCA programming budgets by providing greater certainty that their tax-exempt status would not be subject to change each year based upon the finding of a local assessor.

¶ 31. Moreover, *Soo Line* and *Oak Creek* differ from the present case in that each affected a single location, while YMCAs are located in thirty Wisconsin communities. Additionally, in both *Soo Line* and *Oak Creek*, the challenged laws provided special exemptions to lawful rules or orders of state agencies. Finally, *Oak Creek* determined that the statute under review was not entitled to a presumption of constitutionality, and we consequently considered whether the statute was private legislation under a much lower standard of proof. Because the challenged part of Wis. Stat. § 70.11(12) is not private legislation beyond a reasonable doubt, we therefore conclude it does not violate article IV, section 18.

## B. Equal Protection Challenge

¶ 32. Lake Country contends the YMCA exemption contravenes the equal protection guarantees of the Fourteenth Amendment and article I, section 1 of the Wisconsin Constitution.[9] Under article I, section 1, a classification made by the legislature that does not concern a suspect class or implicate a fundamental

---

[9] Article I, section 1 of the Wisconsin Constitution provides:

right must bear a rational relationship to a legitimate government interest. *State v. Hezzie R.*, 219 Wis. 2d 848, 894, 580 N.W.2d 660 (1998). A statute challenged under the equal protection clause must be proven unconstitutional beyond a reasonable doubt. *State ex rel. Harr v. Berge*, 2004 WI App 105, ¶ 8, 273 Wis. 2d 481, 681 N.W.2d 282.

¶ 33. Before considering whether the classification is rationally related to legitimate government interest, we must answer two threshold questions: "[F]irst, did this legislation create a distinct classification of citizens; and, second, if so, did this legislation treat the class significantly differently from all others similarly situated?" *Milwaukee Brewers*, 130 Wis. 2d at 90. We conclude that Lake Country's equal protection claim fails at this preliminary stage.

¶ 34. The statute creates a distinct classification by exempting the YMCAs from taxation, thereby meeting the first test. However, Lake Country has not shown that for-profit health clubs and the YMCAs are "similarly situated." YMCAs are benevolent organizations; the plaintiffs are for-profit businesses. Each has a very different mission. As the YMCAs note, their eleemosynary mission sets them apart from for-profit health clubs. *See again* ¶¶ 2–3, *supra*. The for-profit health clubs and YMCAs are not sufficiently alike for Lake Country's equal protection claim to pass this threshold inquiry.

**Equality; inherent rights.** Section 1. *[As amended Nov. 1982 and April 1986]* All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

¶ 35. Because on the parties' affidavits and materials we reject Lake Country's constitutional claims as a matter of law, we affirm the circuit court's grants of partial summary judgment and summary judgment to the State and YMCAs.

*By the Court.*—Judgments affirmed.