COURT OF APPEALS
DECISION
DATED AND FILED

October 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP139-CR**

Cir. Ct. No. **2013CF477**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ALLEN J. CAMPBELL,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: GREGORY B. GILL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Allen Campbell appeals from a judgment of conviction for delivery of heroin and an order denying his request for sentence credit under WIS. STAT. § 973.155(1)(a) (2017-18)[1] for eighty days that he resided in a transitional living program (TLP). We affirm.

## BACKGROUND

¶2 In exchange for pleading no contest to the heroin charge, other heroin and cocaine charges were dismissed. The circuit court withheld sentence and placed Campbell on four years' probation. The court also ordered nine months' jail but stayed this time provided Campbell resided at the Mooring House in Appleton or a similar halfway house with alcohol and drug treatment. The stay was lifted, and Campbell was placed in jail after he refused placement at the Mooring House.

¶3 Subsequent to his jail time but while on probation, Campbell entered a TLP in Appleton managed by ATTIC Correctional Services and was placed on electronic monitoring. The TLP discharged Campbell upon successful completion of the program. His discharge summary stated that as conditions of his placement at the TLP, Campbell was required to: (1) avoid criminal behavior; (2) maintain sobriety; (3) secure employment; and (4) avoid "[p]rogrammatic and supervision violations."

¶4 Campbell's probation was later revoked for multiple drug-related violations, absconding from supervision, and impersonating an officer. At

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Campbell's sentencing after revocation, the circuit court imposed one year and six months' initial confinement and three years' extended supervision. Upon the parties' agreement, the court awarded Campbell 315 days of sentence credit.[2]

¶5    Campbell subsequently requested an additional eighty days' sentence credit for the time he resided at the TLP with electronic monitoring, arguing that he was "in custody" within the meaning of WIS. STAT. § 973.155(1)(a) during that time. The State opposed the request, arguing that because Campbell could not have been charged with the crime of escape for leaving the TLP, he was not "in custody" under *State v. Magnuson*, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536. The circuit court issued an oral ruling denying Campbell's request. Campbell now appeals.

## DISCUSSION

¶6    WISCONSIN STAT. § 973.155 provides, in part, that sentence credit "shall be given … toward the service of [an offender's] sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." However, the phrase "in custody" is not defined within the statute.

¶7    In *Magnuson*, our supreme court was asked to determine whether a defendant on electronic monitoring was "in custody" for purposes of the sentence credit statute. *Magnuson*, 233 Wis. 2d 40, ¶1. Magnuson sought six months' credit for time he was released on bond to home detention with electronic

---

[2] Campbell also requested ten days of previously unawarded credit for time in jail immediately after his arrest, and the State ultimately did not oppose this request. The circuit court awarded Campbell an additional ten days of credit, and that additional credit is not an issue on appeal.

monitoring and a strict curfew. *Id.*, ¶¶1, 8-9. In answering the question of what constitutes custody for sentence credit purposes, the court reviewed past precedent and noted that numerous cases had defined "custody" for sentence credit purposes by reference to the definition of custody in the escape statute, WIS. STAT. § 946.42(1).

¶8　　The *Magnuson* court established a bright-line rule for determining whether an offender is "in custody" under WIS. STAT. § 973.155(1)(a): "[A]n offender's status constitutes custody for sentence credit purposes when the offender is subject to an escape charge for leaving that status." *Magnuson*, 233 Wis. 2d 40, ¶¶25, 31, 47. The court noted an escape charge would not lie upon Magnuson's violation of electronic monitoring, or his departure from home detention. Thus, Magnuson was not in custody for purposes of the sentence credit statute. *Id.*, ¶38.

¶9　　*Magnuson*'s standard included the definition of custody found in the escape statute, but it also incorporated legislative efforts to classify certain situations "as restrictive and custodial by attaching escape charges for an unauthorized departure from those situations." *Id.*, ¶26. Among other examples, the court noted that WIS. STAT. § 301.046(1) addresses the community residential confinement program, describing its residents as "prisoners" who may be charged with escape for unauthorized flight from the program. *Magnuson*, 233 Wis. 2d 40, ¶28. Similarly, under WIS. STAT. § 301.048(2)(am)4., a person on probation may be placed on intensive sanctions as an alternative to revocation. The court noted, "WIS. STAT. § 301.048 provides that the Department of Corrections (DOC) shall administer an intensive sanctions program that imposes various sanctions upon participants." *Magnuson*, 233 Wis. 2d 40, ¶29. Sanctions may include electronic monitoring, intensive supervision, mandatory substance abuse

treatment, or a combination of restrictions. *Id.* The failure to comply with the imposed conditions of the intensive sanctions program subjects the offender to a charge of escape under WIS. STAT. § 946.42(3)(a). *Id.* Offenders placed in this program thus may claim credit for time in the program under *Magnuson*.

¶10 Campbell acknowledges that he is not entitled to sentence credit under *Magnuson* because he could not be charged with escape from the TLP. Nevertheless, Campbell argues "the *Magnuson* rule" is "arbitrary and without justification." He asserts the *Magnuson* court, "albeit inadvertently, prioritized the simplicity of a bright-line rule over equal protection." Campbell contends that *Magnuson*, as applied to him, violates his right to equal protection, which guarantees that similarly situated persons are treated similarly. *See Lake Country Racquet & Athletic Club, Inc. v. Morgan*, 2006 WI App 25, ¶33, 289 Wis. 2d 498, 710 N.W.2d 701. Campbell further argues that probationers like himself—who are not in the intensive sanctions program but reside in a TLP with electronic monitoring and "strict rules"—have their freedom "curtailed in just the same way the intensive sanctions program curtails the freedom of its participants." Thus, Campbell asserts he is constitutionally entitled to credit for the eighty days he spent in the TLP.

¶11 When a party attacks a statute on the grounds that it denies equal protection under the law, the party must demonstrate that the state unconstitutionally treats members of similarly situated classes differently. *State v. Post*, 197 Wis. 2d 279, 318, 541 N.W.2d 115 (1995). Here, Campbell fails to show that the specific conditions of his placement at the Appleton TLP constituted restraints similar to those of prisoners placed on intensive sanctions. As mentioned previously, the intensive sanctions program is a specific program established by statute, and the legislature has designated offenders sentenced to, or

placed in, the intensive sanctions program as "prisoner[s]" subject to a charge of escape for failure to comply with the imposed conditions. *See* WIS. STAT. § 301.048(4)(a) and (5).[3]

¶12    In his circuit court brief in support of the motion to amend sentence credit, Campbell contended that he "was required to comply with rigid rules and regulations," but he did not specify what they were.    In his appellate briefs, Campbell only vaguely asserts that he was under "strict rules" and "subject to various … restraints on his freedom" other than electronic monitoring.    At most, the record shows merely that, as conditions of his placement at the TLP, Campbell was required to avoid criminal behavior, maintain sobriety, secure employment, and avoid "[p]rogrammatic and supervision" violations.

¶13    Campbell fails to show that the specific "restraints" he was under as a probationer residing in a TLP supervised by ATTIC Correctional Services—apart from the fact it was a residential program with electronic monitoring and "strict" rules and regulations—were similar to those associated with the intensive sanctions program supervised by the DOC.    Campbell was not a prisoner, and he was not enrolled in the intensive sanctions program subject to an escape charge.

---

[3] The rules of intensive sanctions are established by the DOC pursuant to WIS. STAT. § 301.048(1) and are specifically set forth in Chapter DOC 333 of the Wisconsin Administrative Code.    *See* WIS. ADMIN. CODE § DOC 333.07 (June 2018) ("Rules of supervision").    The intensive sanctions program is designed and administered by the DOC as a "[p]unishment that is less costly than ordinary imprisonment," and it includes "[c]omponent phases that are intensive and highly structured."    Sec. 301.048(1).    For example, § DOC 333.07(1)(n) provides that "an inmate shall wear an electronic device continuously on the inmate's person" when directed by staff to do so "and comply with other requirements of the electronic monitoring system as directed."    Other provisions require inmates to submit a schedule of daily activities to staff, make themselves available for searches and tests ordered by staff, attend and participate in programs and treatment mandated by staff, and "not purchase, lease, possess, trade, sell, or operate a motor vehicle without advance approval" of staff.    Sec. DOC 333.07(1)(h),(i),(j), (L).

Indeed, Campbell fails to establish that the Appleton TLP even housed prisoners sentenced to, or placed in, the intensive sanctions program.

¶14    Campbell's suggestion that there is little difference between his situation and that of a person on intensive sanctions as an alternative to revocation is conclusory and unsupported by the record. He fails in his burden to show the nature and extent of the rules and regulations he was subject to at the TLP, and he has therefore failed to demonstrate that he was similarly situated to a person subject to the intensive sanctions program. Because Campbell cannot show that he was similarly situated to a prisoner on intensive sanctions, he cannot proceed on his equal protection claim.[4]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] The parties dispute the standard of review applicable to a challenge to the difference in treatment of criminal defendants. The State argues that even assuming Campbell was similarly situated to prisoners placed on intensive sanctions, his claim fails because there are rational bases for our supreme court's interpretation of the "in custody" requirement. Campbell contends that because liberty is a fundamental right, the justifications for the "in custody" rule are subject to strict scrutiny. Because we conclude Campbell has failed to show that he was similarly situated to an offender on intensive sanctions, we need not discuss whether the differential treatment is subject to rational basis review or strict scrutiny.